**FOR PUBLICATION**

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11128
_____

ESTELLA CURRY,

*Petitioner-Appellant,*

*versus*

WARDEN,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:20-cv-00591-TFM-MU
_____

Before WILLIAM PRYOR, Chief Judge, and LAGOA and KIDD, Circuit Judges.

KIDD, Circuit Judge:

Estella Curry filed a habeas corpus petition in federal court to challenge her state conviction for reckless murder. The district court denied Curry's petition but allowed her to appeal the denial. Curry claims on appeal that the state trial court improperly denied her the right to represent herself, that the state presented insufficient evidence to permit the jury to convict her, and that she should be allowed to challenge whether her trial counsel provided effective representation.

Under our statutorily limited review, we affirm the district court's denial of habeas relief.

## I. BACKGROUND

### A. *The Crime and Pretrial Proceedings*

In 2014, Richard Walker was driving home in Escambia County, Alabama, when Estella Curry sped toward him from behind and crashed into him. Walker's vehicle flipped off the road, which threw Walker from the vehicle and killed him. Curry was charged with one count of reckless murder. The indictment stated:

> Estella Curry, whose name to the Grand Jury is otherwise unknown, did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than herself, and did thereby cause the death of another person, to-wit: Richard Harmon Walker, by to-wit: driving at a high rate of speed and, while under the influence of one or more controlled substances,

hit another vehicle causing the death of Richard Harmon Walker, in violation of §13A-6-2(a)(2) of the <u>Code of Alabama</u>.

Prior to trial, Curry sent pro se motions to the state court to request removal of her appointed counsel because she was dissatisfied with his services. The clerk subsequently issued a letter informing Curry that the court would consider only motions filed by her counsel. Later, the court issued an order denying a motion entitled "Motion to Remove Attorney from Case." According to Curry, the court held a hearing on the motion, but the transcript of the hearing is not in the state court record.

Curry's pro se motions nevertheless continued. She requested the removal of counsel and the recusal of the judge because he "[d]enied [her] Sixth Amendment rights, forced representation by appointing attorney not requested . . . [and] [d]enied [her] request for self[-]representation." The state court denied these motions.

On the morning of trial, Curry's counsel filed a motion requesting a mental health evaluation of Curry. In court, counsel addressed the motion and explained the cooperation issues he had faced with Curry, making his representation of her "impossible." Counsel also expressed Curry's desire to represent herself, though he disagreed with that request due to Curry's alleged incompetence. The state responded that Curry "chooses not to assist her attorney . . . [as] [s]he has played games ever since the beginning of this case."

The court examined Curry directly: "You want to be your own lawyer and represent yourself in this trial?" Curry answered, "I said that from the beginning." But then she provided conflicting responses. To clarify, the court asked Curry, at least *ten* separate times, what she wanted the court to do and whether her request was to represent herself. In response, Curry expressed dissatisfaction with her counsel, explained she wanted to go through a vetting process to obtain new counsel, and requested additional time to decide whether she wanted to represent herself. The court then explained Curry's rights and examined Curry's competence and ability to represent herself in accordance with *Faretta v. California*, 422 U.S. 806 (1975). Thereafter, the court asked Curry: "Are you still telling me that you want to be your own lawyer?" Curry responded, "I'm telling you I need time to make an informed and intelligent decision."

Once the court finished its discussion with Curry, her counsel moved to withdraw in the interest of Curry's Sixth Amendment right to represent herself. The court denied counsel's request because Curry did not make a "formal" self-representation request. The court asked Curry a final time: "[Y]ou're saying you want to be your own lawyer?" She replied, "No. At this time I'm telling you I can't make an informed or intelligent decision because I asked in January[,] and it was denied." The court scheduled Curry's trial for the next day, with Curry represented by counsel.

B. *The Trial*

Curry proceeded to a three-day jury trial. The state presented testimony from the traffic homicide investigator who responded to the car crash. Next, an accident reconstruction expert opined that Curry was driving between 112 and 123 miles per hour prior to the collision. The emergency room nurse who tended to Curry after the crash testified that she collected two blood samples and one urine sample from Curry. An analysis of the urine sample revealed opiates and tricyclic antidepressants.

A forensic toxicology expert testified that Curry's blood sample tested positive for several drugs, including a tricyclic antidepressant, a muscle relaxer, a sleep aid, and a medication used to treat irritable bowel syndrome. He explained that the side effects of these drugs included drowsiness, dizziness, confusion, blurred vision, slurred speech, and decreased reaction time. Moreover, some of these drugs came with labels warning against driving a motor vehicle and combining the drugs with other drugs. The expert opined that "[l]ooking at the combination of these drugs and knowing the effects each one of them individually have, the chances of [Curry's] impairment being there is much more likely than not."

The jury also heard testimony from Walker's spouse, a witness to the car crash, and a forensic pathology expert who conducted Walker's autopsy. Additionally, the state presented several exhibits, including photographs and reports of the car crash, as well

as Curry's hospital records, blood and urine samples, and toxicology report.

Once the state rested, Curry moved for a judgment of acquittal, and the court denied the motion. In her defense, Curry called the Director of the Escambia County Emergency Communication District as a witness to testify about the 911 calls received on the day of the car crash. She also presented an exhibit about her car's speedometer. The defense rested and moved again for a judgment of acquittal, which the court again denied.

The court instructed the jury on the crimes of reckless murder and the lesser included offenses of manslaughter and criminally negligent homicide. When instructing the jury on reckless murder, the court stated:

> To convict, the State must prove beyond a reasonable doubt each of the following elements of murder. One, that Richard Harmon Walker is dead. Two, that the defendant, Estella Curry, caused the death of Richard Harmon Walker by – and the alleged act is what's actually contained in the indictment – driving at a high rate of speed and while under the influence of one or more controlled substances, hit another vehicle causing the death of Richard Harmon Walker. And next, that in committing the act which caused the death of Richard Harmon Walker, the defendant acted with extreme indifference to human life.

The jury found Curry guilty of reckless murder, and the court sentenced Curry to life in prison.

### C. *The Post-Trial Proceedings*

Curry sought new counsel and appealed her conviction to the Alabama Court of Criminal Appeals. Curry challenged the trial court's rulings on her competency to stand trial, her right to represent herself, and the sufficiency of the evidence. After reviewing Curry's claims on the merits, the state appellate court affirmed the trial court.

Curry subsequently obtained new counsel and filed in the trial court a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. The court dismissed Curry's petition because Curry's legal arguments "were or could have been raised on appeal." The state appellate court affirmed, and the Alabama Supreme Court denied her petition for certiorari.

### D. *The Federal Habeas Proceedings*

In 2020, Curry obtained new counsel and filed a habeas corpus petition in the Southern District of Alabama. The magistrate judge recommended that the district court deny Curry's habeas petition and grant her a certificate of appealability ("COA") on three issues. The district court adopted the magistrate judge's recommendation, and this appeal followed.

Before filing her initial brief on appeal, Curry moved this Court to supplement the record and to expand the COA to include a fourth issue. Curry wanted to supplement the record with the missing transcript of a pretrial hearing that occurred in the state court. We denied the request to supplement because Curry failed

to show that the transcript "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). As to the COA, we allowed the expansion because the fourth issue was related to the second issue. The final version of Curry's COA specifies these issues:

1. Does Curry qualify for the *Martinez* [*v. Ryan*, 566 U.S. 1, 12–17 (2012)] exception to establish cause for the procedural default of her ineffective-assistance-of-trial-counsel claims?

2. Was the Alabama courts' ruling that Curry never made a clear and unequivocal request for self-representation based on an unreasonable determination of facts in light of the evidence?

3. Was Curry's conviction for reckless murder based on insufficient evidence when the indictment and the jury instructions alleged that Curry was under the influence of "controlled substances" at the time of the offense, but the evidence at trial suggested she was under the influence of prescription medications that were not technically "controlled substances"?

4. Whether, in denying Curry's claim that she was deprived of her constitutional right to self-representation, the state court reasonably applied clearly established federal law, namely *Faretta v. California*, 422 U.S. 806 (1975), in concluding that Curry was not entitled to relief?

## II. STANDARD OF REVIEW

"We review a court's decision to deny a § 2254 petition de novo, applying a de novo standard to legal conclusions and a clear error standard to factual findings." *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1352 (11th Cir. 2024).

When a state court's adjudication of a petitioner's claim was on the merits, our review is further governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* AEDPA prohibits relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). "If a state court unreasonably applied federal law or unreasonably determined the facts in a case, we review the underlying claim de novo." *King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 867 (11th Cir. 2023) (emphasis omitted).

Under 28 U.S.C. § 2254(d)(1), a state court's decision is "contrary to . . . clearly established Federal law" when it "appl[ies] a rule that contradicts the governing law set forth by Supreme Court case law," or when it "reach[es] a different result from the Supreme Court when faced with materially indistinguishable facts." *Davis v. Comm'r, Ala. Dep't of Corr.*, 120 F.4th 768, 788 (11th Cir. 2024) (citation modified). An "unreasonable application of . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), occurs when "the state

court correctly identifies the governing legal principles from the Supreme Court's decisions but unreasonably applies it to the facts of the particular case." *Davis*, 120 F.4th at 788 (citation modified). "A state court unreasonably applies federal law only if no fair-minded jurist could agree with the state court's determination or conclusion." *King*, 69 F.4th at 867 (citation modified).

For our review of habeas corpus petitions pursuant to 28 U.S.C. § 2254(d)(2), "a state court's factual determinations are 'presumed to be correct,'" and that presumption can be overcome only "by clear and convincing evidence." *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(e)(1)). Still, "[e]ven if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(2)). "Depending on the importance of the factual error to the state court's ultimate 'decision,' that decision might still be reasonable even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (citation modified).

Finally, "in an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA." *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998).

### III. DISCUSSION

We will first discuss Curry's claims of ineffective assistance of counsel and whether they were procedurally defaulted. Then we will turn to Curry's right to self-representation, followed by the sufficiency of the evidence to convict her.

#### A. *Procedural Default of the Ineffective Assistance Claims*

The district court found that Curry procedurally defaulted several of her habeas claims because she failed to raise them in the state court. A federal court may consider the merits of a procedurally defaulted claim if the petitioner establishes one of two exceptions. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). First, the petitioner may show cause for the default and prejudice from it. *Wainwright v. Sykes*, 433 U.S. 72, 81–88 (1977). One way to do this is under *Martinez*, 566 U.S. at 12–17, which allows a habeas petitioner to establish that counsel at the initial collateral-review proceeding was ineffective for failing to preserve a claim that the petitioner's trial counsel was ineffective. *Carruth*, 93 F.4th at 1359. The second procedural default exception applies if a petitioner can show that failure to consider the claim would result in a fundamental miscarriage of justice. *Thompson*, 501 U.S. at 749–50.

For Curry's ineffective assistance claims, the district court granted a COA on the following issue: "Does Curry qualify for the *Martinez* exception to establish cause for the procedural default of her ineffective-assistance-of-trial-counsel claims?" But Curry does not address *Martinez* in her briefs on appeal, so she forfeits the issue. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir.

2022) (en banc) (holding "that the mere failure to raise an issue in an initial brief on direct appeal should be treated as a forfeiture of the issue"); *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1296–97 (11th Cir. 2015). While Curry addresses the exception for a fundamental miscarriage of justice, that argument goes beyond the scope of the COA. *Murray*, 145 F.3d at 1251 ("[I]n an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the COA.").

B. *Self-Representation*

In the state appellate court, Curry claimed that the trial court denied her Sixth Amendment right to self-representation. The state appellate court ruled that Curry had not preserved the claim for appellate review, but that it would nevertheless fail because she never "clearly and unequivocally" stated that she wanted to represent herself. Curry contends that this denial of her self-representation claim "involved an unreasonable application of . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), and "was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2).

The district court concluded that Curry failed to show that the denial of her self-representation claim "involved an unreasonable application" of federal law, or "was based on an unreasonable determination of facts." 28 U.S.C. § 2254(d)(1)–(2). We agree with the district court's conclusion.

1. Self-Representation: 28 U.S.C. § 2254(d)(1)

Curry argues that her case is "nearly identical" to *Faretta*, and the state appellate court unreasonably applied *Faretta* in determining that she did not "clearly and unequivocally" request to represent herself.

In *Faretta*, the Supreme Court held that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." 422 U.S. at 819. First, a defendant must assert the right to self-representation "clearly and unequivocally, understandable to the trial court by the reasonable person standard." *Stano v. Dugger*, 921 F.2d 1125, 1144 (11th Cir. 1991). Then the trial court must ensure that the defendant "competently and intelligently" chooses self-representation. *Faretta*, 422 U.S. at 835. And only if the trial court is satisfied at step two must it permit self-representation. *Id.* at 835–36. Importantly, we have explained that "[w]hether Faretta's invocation of his right to counsel was 'clear and unequivocal' was not a disputed issue in the case." *Gill v. Mecusker*, 633 F.3d 1272, 1293 (11th Cir. 2011).

Despite receiving several opportunities to "clearly and unequivocally" invoke her right to self-representation, Curry never did so. *Compare id.* at 1295–96 (finding the self-representation request equivocal where the defendant's statements "were qualified and conditioned" and the defendant "vacillated between self-representation and being represented by counsel"), *with United States v. Da-*

*vis*, 130 F.4th 1272, 1287–88 (11th Cir. 2025) (finding the self-representation request clear and unequivocal where the defendant filed a motion to proceed pro se that cited *Faretta*, counsel filed a separate motion confirming the request, and at the subsequent hearing, the defendant stated, "I would like to represent myself"). Based on this record, the state appellate court's denial of Curry's self-representation claim did not "involve[] an unreasonable application of" *Faretta*. 28 U.S.C. § 2254(d)(1).

### 2. Self-Representation: 28 U.S.C. § 2254(d)(2)

Curry also argues that the state appellate court's denial of her self-representation claim was "based on an unreasonable determination of the facts" because the state appellate court addressed only the hearing that occurred immediately prior to trial and failed to consider other pretrial motions and hearings relevant to her claim. *See* 28 U.S.C. § 2254(d)(2).

Most of Curry's arguments pertain to a hearing that occurred on January 31, 2017. Curry attempted to supplement the record before us with the transcript of this hearing, but we denied that request. In our limited review of this issue, we cannot consider matters that were not presented to the state court, and Curry concedes that this hearing was not in the record before the state appellate court. *Landers*, 776 F.3d at 1295 (highlighting the "explicit textual restriction to evaluate the state court ruling only 'in light of the evidence presented in the State court proceeding'" (quoting 28 U.S.C. § 2254(d)(2))).

Curry also relies on a series of pretrial motions and hearings in which she requested removal of her counsel, expressed dissatisfaction with her counsel and the trial court, and rejected court-appointed counsel. But Curry never requested to represent herself in any of these motions and hearings, and she does not contend that she did so.

Because the state appellate court's focus on the final hearing was not unreasonable, we cannot say that its denial of Curry's self-representation claim was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

### C. *Sufficiency of the Evidence*

Curry maintains that the evidence at trial was insufficient to support her conviction for reckless murder. The state appellate court determined that the "evidence presented by the State was sufficient to establish a prima facie case of reckless murder and was sufficient for the jury to find Curry guilty of that offense beyond a reasonable doubt." The district court denied habeas relief on this claim because Curry failed to show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2). We reach the same conclusion as the district court.

#### 1. Sufficiency of the Evidence: 28 U.S.C. § 2254(d)(1)

Neither the COA nor Curry's briefing explicitly reference § 2254(d)(1). A generous reading of the briefing shows that Curry potentially relies upon *Miller v. Pate*, 386 U.S. 1 (1967), to contend

that the state appellate court's denial of her sufficiency of the evidence claim was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). But *Miller* deals with false evidence, not sufficiency of the evidence, so even under a generous reading, Curry does not identify the correct law governing the issue.

The proper legal standard for a sufficiency of the evidence claim is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Coleman v. Johnson*, 566 U.S. 650, 654 (2012). Under *Jackson*, courts evaluate whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. In doing so, courts review "the evidence in the light most favorable to the prosecution" and refrain from substituting their judgment for that of the trier of fact. *Id.* at 318–19.

Because the state appellate court properly applied the Alabama equivalent of this standard, its denial of Curry's sufficiency of the evidence claim was not "contrary to" or an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1); *Faircloth v. State*, 471 So. 2d 485, 489 (Ala. Crim. App. 1984), *aff'd sub nom.*, *Ex parte Faircloth*, 471 So. 2d 493 (Ala. 1985); *Borden v. Allen*, 646 F.3d 785, 817 n.41 (11th Cir. 2011) (noting that § 2254(d)(1) "does not require citation of the [Supreme Court's] cases . . . so long as neither the reasoning nor the result of the state-court decision contradicts them" (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002))).

2. Sufficiency of the Evidence: 28 U.S.C. § 2254(d)(2)

Curry argues that, without the use of the terms "opiates" and "controlled substances," the remaining evidence was insufficient to support her conviction for reckless murder. We must determine whether the state appellate court's denial of Curry's claim was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). We conclude that it was not.

We first "look to state law for the substantive elements of the criminal offense." *Johnson*, 566 U.S. at 655 (citation modified). Under Alabama law, "[a] person commits the crime of murder if . . . [u]nder circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person." Ala. Code § 13A-6-2(a)(2) (1975).

Curry contends that the references to opiates and controlled substances misrepresented the record and that, without this misrepresentation, the jury would not have convicted her of reckless murder. Yet, Curry does not dispute that her urine sample tested positive for opiates. Moreover, as the state appellate court explained, while being "under the influence of a controlled substance . . . may be presented as *evidence* that the defendant's conduct was reckless, . . . [it] is not a statutory *element* of reckless murder as that crime is defined in § 13A-6-2(a)(2)." *Chambers v. State*, 644 So. 2d 1294, 1296–97 (Ala. Crim. App. 1994) (citation modified).

We will assume, for a moment, that the references to opiates and controlled substances did not exist. The remaining evidence showed that Curry was driving at an excessive rate of speed at a time when she had a mixture of drugs in her system that "more likely than not" led to her impairment. The state appellate court determined that this remaining evidence was "sufficient to establish a prima facie case of reckless murder and was sufficient for the jury to find Curry guilty of that offense beyond a reasonable doubt." And while Curry maintains that this determination was incorrect, "the question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Landers*, 776 F.3d at 1293–94 (citation modified). We find that the state appellate court's determination was not unreasonable.

## IV. CONCLUSION

We **AFFIRM** the judgment of the district court.